## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAKETA McCOY,** | ) | |
| **Plaintiff,** | ) | **No. 10 C 5685** |
| **v.** | ) | |
| | ) | **Judge Manning** |
| **THE CITY OF CHICAGO,** | ) | |
| **an Illinois municipal corporation,** | ) | **Magistrate Judge Denlow** |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT CITY OF CHICAGO'S
### ANSWER TO PLAINTIFF'S COMPLAINT

Defendant City of Chicago (the "City"), by its attorney Stephen R. Patton, Corporation Counsel of the City, answers plaintiff's complaint as follows:

### Nature of Action

1.    This action seeks redress for the wrongs defendant committed by discriminating and retaliating against plaintiff in violation of the Americans with Disabilities Act of 1990 and/or by interfering with plaintiff's rights and retaliating against plaintiff in violation of the Family and Medical Leave Act of 1993.

**ANSWER:**    The City admits that plaintiff purports to bring this action for alleged

discrimination and retaliation of the Americans with Disabilities Act of 1990 ("ADA") and/or

interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA").  The

City denies that it illegally discriminated or retaliated against plaintiff or otherwise violated any

state, federal, or local laws and denies any remaining allegations.

### Parties

2.    Plaintiff is Laketa McCoy ("Ms. McCoy").

**ANSWER:**    The City admits paragraph 2.

3.    Defendant is the City of Chicago, an Illinois municipal corporation.

**ANSWER:**    The City admits paragraph 3.

4.      Around June 2005, defendant hired Ms. McCoy as a Traffic Control Aide.

**ANSWER:**      The City admits that on June 6, 2005, plaintiff was hired by the City as an hourly

Traffic Control Aide.


5.      Shortly after defendant hired Ms. McCoy, it received a letter from Edward T.
Naureckas, M.D., Associate Professor of Medicine at the University of Chicago, stating that Ms.
McCoy suffered from sarcoidosis, partial complex seizures without generalization, and diabetes
mellitus, some or all of which may have required defendant to provide Ms. McCoy with
reasonable accommodations such as being permitted to sit down periodically, being permitted
access to shade, being permitted access to water, and being permitted restroom breaks. See,
6/19/05 letter from Associate Professor of Medicine Naureckas, attached to this Complaint as
Exhibit A.

**ANSWER:**      Based on a review of its files, the City admits it has a letter dated Jun 19, 2005,

purportedly from Edward T. Naureckas, M.D., Associate Professor of Medicine at the University

of Chicago. The letter states plaintiff "suffers from sarcoidosis, . . . seizures, which appear to be

partial complex seizures without generalization and diabetes mellitus." The letter also states that

plaintiff "may require some accommodations to allow her to attend school." Plaintiff does not

define "shortly" so the City lacks knowledge to that term. The City is without knowledge as to

whether plaintiff has or had sarcoidosis, partial complex seizures without generalization, or

diabetes mellitus. The City denies that the letter sought a reasonable accommodation from the

City because the letter states "To Whom It May Concern" and it states that plaintiff "may require

some accommodations to allow her to attend school." The City admits that the letter identified

these accommodations as including "the ability to sit down periodically, access[ing] shade,

access[ing] water and breaks for use of the restroom." The City lacks knowledge as to the

remaining statements in paragraph 5.

6.    In July 2007, while defendant still employed Ms. McCoy as a Traffic Control Aide, defendant learned that Ms. McCoy required a reasonable accommodation of working on a reduced schedule of four hours per day. See, 7/7/07 [sic] letter from Assistant Professor of Neurology Kelly, attached to this Complaint as Exhibit B.

**ANSWER:**    The City admits that in July 2007, plaintiff was still employed by the City as an

hourly Traffic Control Aide.  The City denies the first sentence because of the vague term

"learned" and because the letter from Thomas J. Kelly, Assistant Professor of Neurology, does

not include the phrase "required a reasonable accommodation" and is dated June 7, 2007.  The

City admits that Dr. Kelly's June 7 letter states that plaintiff "may return to work on July 1, 2007

on a reduced schedule of four hours per day."  Based on a review of City documents, the City

denies that plaintiff made a reasonable accommodation request prior to her August 14, 2008

request for a reasonable accommodation.  The City denies the remaining statements in the first

sentence and admits the second sentence.

7.    In response to that request, defendant assigned Ms. McCoy to work a shift of four hours per day as a reasonable accommodation for Ms. McCoy's disabilities.

**ANSWER:**    Based on a review of its records, plaintiff submitted only one written request for

an accommodation on or about August 14, 2008, and it was denied on September 9, 2008.

Plaintiff does not define the term "disabilities;" who made the "request;" nor does she identify

what the "request" sought and, therefore, the City lacks knowledge to the remaining statements in

paragraph 7.

8.    When defendant granted Ms. McCoy this reasonable accommodation of working a shift of four hours per day, defendant was also assigning other of its Traffic Control Aides to a shift of the same length.

**ANSWER:**    Based on a review of its records, plaintiff submitted only one written request for

an accommodation on or about August 14, 2008, and it was denied on September 9, 2008.

Plaintiff does not identify who the "other" Traffic Control Aides that were purportedly also

receiving a four-hour per day accommodation and, therefore, the City lacks knowledge.


9.    In approximately April 2008, defendant chose to require Ms. McCoy to provide it
with an updated doctor's note.

**ANSWER:**    Plaintiff does not identify who at the City "chose to require" an updated doctor's

note and, therefore, the City lacks knowledge to the statements in paragraph 9.


10.    Defendant thereupon received from Ms. McCoy an updated doctor's note stating
that Ms. McCoy could only work four hours a day due to "multiple medical issues". [sic] <u>See</u>,
4/30/08 letter from Assistant Professor of Neurology Kelly, attached to this Complaint as Exhibit
C.

**ANSWER:**    Based on a review of its files, the City admits it has a note dated April 30, 2008,

purportedly from Dr. Kelly.  The City admits that the note states that plaintiff should "continue

on a reduced work schedule of four hours per day due to multiple medical issues."  The City

denies the remaining statements in paragraph 10 and denies that it knew what those unidentified

"multiple medical issues" were.  The City admits the second sentence.


11.    Rather than continuing to accommodate Ms. McCoy, defendant chose to stop
providing Ms. McCoy with the reasonable accommodation of working a shift of four hours per
day.  <u>See</u>, 6/25/08 letter from defendant's Supervisor of Personnel Administration, attached to this
Complaint as Exhibit D.

**ANSWER:**    Based on a review of its records, plaintiff submitted only one written request for

an accommodation on or about August 14, 2008, and it was denied on September 9, 2008.  The

City denies that it "continu[ed]" giving her an accommodation.  The City admits that on or about

June 25, 2008, it sent plaintiff a letter stating that it was unable to approve plaintiff's request to

work four hours per day.  The City also admits that the letter instructed plaintiff to contact a City

employee if she believed that she was eligible to request a reasonable accommodation under the

Americans with Disabilities Act.  The City denies the remaining statements in the first sentence.

The City admits that the letter was from the Office of Emergency Management and

Communications' Supervisor of Personnel Administration, but denies he was plaintiff's

supervisor.  The City admits the June 25, 2008 letter is attached to the complaint as Exhibit D.

      12.    Defendant chose to stop accommodating Ms. McCoy even though the reasonable
accommodation of Ms. McCoy's working a shift of four hours per day had been going well both
for the defendant and for Ms. McCoy.

**ANSWER:**    Based on a review of its records, plaintiff submitted only one written request for

an accommodation on or about August 14, 2008, and it was denied on September 9, 2008.  The

City denies that it "stop[ped]" giving her a reasonable accommodation.  The City lacks

knowledge to the remaining allegations in paragraph 12.

      13.    Defendant also chose to stop accommodating Ms. McCoy even though when
defendant chose to deny Ms. McCoy's request for an accommodation of working a shift of four
hours per day, defendant had been assigning other Traffic Control Aides to such shifts.

**ANSWER:**    Based on a review of its records, plaintiff submitted only one written request for

an accommodation on or about August 14, 2008, and it was denied on September 9, 2008.  The

City denies that it "stop[ped]" giving her a reasonable accommodation.  Plaintiff does not

identify who the "other" Traffic Control Aides that were purportedly also receiving a four-hour

per day accommodation and, therefore, the City lacks knowledge to the remaining statements in

paragraph 13.

14.     After defendant chose to deny Ms. McCoy's request for a reasonable accommodation, defendant received from Ms. McCoy an internal appeal of that denial.

**ANSWER:**     Based on a review of its records, plaintiff submitted only one written request for

an accommodation or about August 14, 2008, and it was denied on September 9, 2008.  Plaintiff

does not identify where, how, or to whom she sent her "internal appeal" and, therefore the City

lacks knowledge to the remaining statements in paragraph 14.


15.     On September 9, 2008, defendant again chose to deny Ms. McCoy's request for a reasonable accommodation. See, defendant's 9/9/08 denial of reasonable accommodation, attached to this Complaint as Exhibit E.

**ANSWER:**     The City admits, based on a review of its records, that plaintiff submitted only one

written request for an accommodation on or about August 14, 2008, and it was denied on

September 9, 2008.   The City denies the remaining allegations in the first sentence.  The City

admits the second sentence.


16.     From September 9, 2008, through and including the present, defendant has chosen not to schedule Ms. McCoy to work, with or without the reasonable accommodation of Ms. McCoy's working a shift of four hours per day, thereby effectively firing Ms. McCoy.

**ANSWER:**     Based on a review of its records, plaintiff submitted only one written request for

an accommodation on or about August 14, 2008, and it was denied on September 9, 2008.  The

City denies the phrase "chosen not to schedule Ms. McCoy to work, with or without reasonable

accommodation of Ms. McCoy's working a shift of four hours per day, thereby effectively firing

Ms. McCoy."  The City denies that it has fired plaintiff or that it "chose[] not to schedule"

plaintiff.  The City admits that it sent plaintiff the June 25, 2008 letter (attached to plaintiff's

complaint as Ex. D) where plaintiff was explained that it was her choice to work without

restrictions. The letter also stated that she could not work until she complied with the Traffic

Control Aide Hourly ("TCAH") Availability, Overtime, No Show, and Tardiness Policy

Memorandum. The City admits that plaintiff has, to date, not complied with that memorandum.

17.    To this day, defendant chooses to assign other Traffic Control Aides to shifts of four hours per day, although it chooses to refuse to do so for Ms. McCoy. The allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**ANSWER:**    The City denies that it "chooses to refuse to assign" a four hour shift to plaintiff.

Plaintiff does not identify who the "other" Traffic Control Aides that were purportedly also

receiving a four-hour per day shift and, therefore, the City lacks knowledge to the remaining

allegations in the first sentence. In the second sentence, the City lacks knowledge as to what

discovery is "likely" to support her evidence.

18.    Defendant's actions and/or omissions as alleged proximately resulted in Ms. McCoy losing her job, losing wages, losing employment benefits, losing then-current and then-future Family and Medical Leave Act rights, and suffering pain.

**ANSWER:**    The City denies paragraph 18.

**Jurisdiction and Venue**

19.    This Court has jurisdiction under §706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)], as incorporated by §107(a) of the Americans with Disabilities Act of 1990 as amended [42 U.S.C. 12117(a)], under §107(a)(2) of the Family and Medical Leave Act of 1993 as amended [29 U.S.C. §2617(a)(2)], and under §§1331 and 1343 of the Judicial Code [28 U.S.C. §§1331 and 1343].

**ANSWER:**    The City admits that this Court has jurisdiction over plaintiff's purported claims

pursuant to 28 U.S.C. §§1331 and 1343, 42 U.S.C. §12117(a), and 29 U.S.C. §2617(a)(2). The

City denies the Court has jurisdiction under Title VII because there is no Title VII claim in

plaintiff's complaint. The City denies that it violated the ADA, the FMLA, or any statute, and

denies the remaining allegations in paragraph 19.


20.    Ms. McCoy worked for the defendant in the Northern District of Illinois, and this
cause of action arose in that District. Venue is proper by §1391(b) of the Judicial Code [28
U.S.C. §1391(b)].

**ANSWER:**    The City admits paragraph 20.


**Count I - Disability Discrimination**

21.    Ms. McCoy realleges paragraphs 1 through 20 of this Complaint.

**ANSWER:**    The City restates and realleges its answers to Paragraphs 1 through 20 above as

though fully set forth herein.


22.    From when defendant hired Ms. McCoy through the present, among other times,
defendant was an "employer" within the definition of §101(5) of the Americans with Disabilities
Act of 1990 as amended [42 U.S.C. §12111(5)].

**ANSWER:**    Plaintiff does not identify the phrase "among other times" and, therefore, the City

lacks knowledge of that phrase. The City admits that while plaintiff was employed by the City it

was an "employer" as defined by § 101(5) of the ADA of 1990 as amended.


23.    From when defendant hired Ms. McCoy through defendant's choice to fire Ms.
McCoy, among other times, Ms. McCoy was an "employee" of defendant's within the definition
of §101(4) of the Americans with Disabilities Act of 1990 as amended [42 U.S.C. §12111(4)]
and a "qualified individual with a disability" within the definition of §101(8) of the Americans
with Disabilities Act of 1990 as amended [42 U.S.C. §12111(8)].

**ANSWER:**    Plaintiff does not identify the phrase "among other times" and, therefore, the City

lacks knowledge of that phrase. The City denies that it fired plaintiff. The City admits that

plaintiff is an "employee" of the City as it is defined by §101(4) of the ADA of 1990 as amended

[42 U.S.C. §12111(4)]. The City lacks knowledge if she is a "qualified individual with a

disability" within the definition of §101(8) of the ADA of 1990 as amended [42 U.S.C.

§12111(8)].

     24.    Ms. McCoy has fulfilled all conditions precedent to the bringing of this claim
under the Americans with Disabilities Act of 1990. Her Charge of Discrimination against
defendant was timely cross-filed with the Equal Employment Opportunity Commission by the
Illinois Department of Human Rights and is attached to this Complaint as Exhibit F. The EEOC
issued a Notice of Right to Sue to Ms. McCoy on June 14, 2010, which is attached to this
Complaint as Exhibit G. This Complaint is being filed within 90 days of Ms. McCoy's receipt of
that Notice of Right to Sue.

**ANSWER:**    The City admits that plaintiff filed Charge No. 2009 CF 1321 with the Equal

Employment Opportunity Commission on or about November 3, 2008, and that the Charge is

attached as Exhibit F to the Complaint. The City admits that Exhibit G is a right-to-sue letter

from the EEOC that is dated June 14, 2010. The City admits that plaintiff filed her lawsuit on

September 7, 2010, and that is within 90 days of her June 14, 2010 right-to-sue letter. The City

lacks knowledge as to the remaining statements in paragraph 24.

     25.    Defendant, by the actions and/or omissions alleged, discriminated against Ms.
McCoy in the terms and conditions of her employment on the basis of her disability and/or its
perception of her as disabled and/or her record of disability.

**ANSWER:**    The City denies paragraph 25.

     26.    Defendant's discrimination proximately resulted in Ms. McCoy suffering the
damages alleged.

**ANSWER:**    The City denies paragraph 26.

**Count II - ADA Retaliation**

27. Ms. McCoy realleges paragraphs 21 through 24 of this Complaint.

**ANSWER:** The City restates and realleges its answers to Paragraphs 21 through 24 above as though fully set forth herein.

28. Defendant, by the actions and/or omissions alleged, retaliated against Ms. McCoy in the terms and conditions of her employment in violation of the Americans with Disabilities Act of 1990 as amended.

**ANSWER:** The City denies paragraph 28.

29. Defendant's retaliation proximately resulted in Ms. McCoy suffering the damages alleged.

**ANSWER:** The City denies paragraph 29.

## Count III -FMLA Retaliation

30. Ms. McCoy realleges paragraphs 1 through 20 of this Complaint.

**ANSWER:** The City restates and realleges its answers to Paragraphs 1 through 20 above as though fully set forth herein.

31. Ms. McCoy's doctor's request that Ms. McCoy work a reduced schedule of four hours per day qualified as a request for "intermittent leave" and/or as a request for a "reduced work schedule" under the Family and Medical Leave Act of 1993, as amended, and under the Department of Labor's FMLA regulations.

**ANSWER:** Plaintiff does not identify which "doctor's request" she is referring to or when it was submitted and, therefore, the City lacks knowledge. Based on a review of its records, the City denies that plaintiff ever requested a leave under the FMLA.

-10-

32.     During Ms. McCoy's employment with defendant, among other times, defendant was an "employer" within the definition of §101(4)(A) of the Family and Medical Leave Act of 1993 as amended [29 U.S.C. §2611(4)(A)].

**ANSWER:**     Plaintiff does not identify the phrase "among other times" and, therefore, the City lacks knowledge of that phrase.  The City admits that it is an "employer" under the definition of § 101(4)(A) of the FMLA of 1993 as amended.

33.     From approximately June 2006 through the termination of her employment by defendant, Ms. McCoy was an "eligible employee" within the definition of §101(2) of the Family and Medical Leave Act of 1993 as amended [29 U.S.C. §2611(2)].  The allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and/ or discovery.

**ANSWER:**     In the first sentence, the City denies that plaintiff was an eligible employee within the definition of §101(2) of the Family and Medical Leave Act of 1993 as amended [29 U.S.C. §2611(2)] and denies the remaining statements.  In the second sentence, the City lack knowledge as what plaintiff believes the evidence will "likely" support.

34.     Defendant willfully violated the Family and Medical Leave Act of 1993, as amended.

**ANSWER:**     The City denies paragraph 34.

35.     Defendant, by the actions and/or omissions alleged, retaliated against Ms. McCoy and/or discriminated against her for her exercise of her rights under the Family and Medical Leave Act of 1993, as amended, in violation of the anti-interference and anti-discrimination provisions of §l05(a) of that Act [29 U.S.C. §2615(a)] and/or in violation of the Department of Labor's anti-retaliation and anti-discrimination regulation [29 C.F.R. §825.220] under that Act.

**ANSWER:**     The City denies paragraph 35.

36.     Defendant's retaliation proximately resulted in Ms. McCoy suffering the damages alleged.

-11-

**ANSWER:**     The City denies paragraph 36.


**Count IV - FMLA Interference**

37.     Ms. McCoy realleges paragraphs 30 through 34 of this Complaint.

**ANSWER:**     The City restates and realleges its answers to Paragraphs 30 through 34 above as

though fully set forth herein.


38.     When defendant chose to fire Ms. McCoy, it anticipated or feared that she would
use in the future additional leave under the Family and Medical Leave Act of 1993. The
allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity
for further investigation and/or discovery.

**ANSWER:**     The City denies the first sentence of paragraph 38.  In the second sentence, the

City lacks knowledge as to what plaintiff believes the evidence will "likely" support.


39.     Defendant, by choosing not to permit Ms. McCoy to work a reduced schedule of
four hours per day and/or by choosing to fire Ms. McCoy, interfered with Ms. McCoy's exercise
of her then-current Family and Medical Leave Act rights and/or with her exercise of her
then-future Family and Medical Leave Act rights, all in violation of the anti-interference
provisions of §l05(a) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2615(a)] and/or
of the Department of Labor's anti-retaliation and anti-discrimination regulation [29 C.F.R.
§825.220] under that Act.

**ANSWER:**     The City denies paragraph 39.


40.     Defendant's interference proximately resulted in Ms. McCoy suffering the
damages alleged.

**ANSWER:**     The City denies paragraph 40.

WHEREFORE, Defendant City of Chicago requests that this Court dismiss plaintiff's

complaint with prejudice and enter judgment in its favor.

## JURY DEMAND

The City demands a trial by jury.

## ADDITIONAL DEFENSES

1.     Any allegations supporting plaintiff's ADA claim that occurred more than 300 days prior to the filing of her EEOC charge are time barred.

2.     Any claims in plaintiff's complaint that are not within the scope of her EEOC charge are barred for failure to exhaust administrative remedies.

3.     Plaintiff is not entitled to back pay to the extent that she failed to mitigate her damages.

DATED: June 20, 2011                     Respectfully submitted,

                                         STEPHEN R. PATTON
                                         Corporation Counsel of the City of Chicago

                              BY:     *s/ Peter Ahmadian*
                                         PETER AHMADIAN
                                         MELANIE PATRICK NEELY
                                         Assistants Corporation Counsel

30 North LaSalle Street
Suite 1020
Chicago, IL 60602
(312) 744-0898